UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-21711-RAR

**YULIETH ANDREA ECHEVERRI**,

      Plaintiff,

v.

**UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES**, *et al.*,

      Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Complaint ("Motion"), [ECF No. 6].[1]  The Court, having reviewed the Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 6], is **GRANTED** as explained herein.

## BACKGROUND

Plaintiff Yulieth Andrea Echeverri brings this action to compel Defendants to issue a decision on her pending Form I-601A.  *See generally* Complaint in the Nature of Mandamus Arising from Defendants' Refusal to Adjudicate Plaintiff's I-601A Application for Provisional Unlawful Presence Waiver ("Complaint"), [ECF No. 1].  Echeverri's Form I-601A has been pending with U.S. Citizenship and Immigration Services ("USCIS") since April 20, 2021.  Compl. ¶ 7.  Echeverri is a citizen of Colombia who resides in Miami, Florida with her husband, Orlando

---

[1] Plaintiff filed a Response, [ECF No. 9].  The Court did not allow Defendants to file a Reply.  *See* Order to Show Cause, [ECF No. 4].  Accordingly, the Motion is fully briefed and ripe for review.

Miguel Barrera, who is a U.S. citizen. Compl. ¶¶ 1–4. The Court will briefly summarize the immigration process relevant to this dispute.

Noncitizens may become lawful permanent residents of the United States through a familial relationship with a United States citizen or lawful permanent resident. *See* 8 U.S.C. § 1154(a)(1)(A)(i). The first step in this process requires a citizen or lawful permanent resident to file a Form I-130 on behalf of the noncitizen relative. *See* Mot. at 3. Once USCIS approves the Form I-130, some noncitizens must then apply for an immigrant visa at a U.S. embassy or consulate. *Id.* This step puts some noncitizens at odds with other immigration laws. If a noncitizen has been unlawfully present in the United States for more than 180 days—which is not uncommon for someone seeking lawful status—the person is deemed inadmissible for a specified period of time following their departure or removal. *See* 8 U.S.C. § 1182(a)(9)(B)(i). The problem is obvious: one law requires them to leave the country and the other prevents them from returning.

But there is a path forward for these noncitizens. The Attorney General may waive inadmissibility based on unlawful presence. *Id.* § 1182(a)(9)(B)(v). The decision of whether to do so rests in the Attorney General's "sole discretion." *Id.* Two requirements must be met to qualify for a waiver. First, the noncitizen must be "the spouse or son or daughter of a United States citizen or" lawful permanent resident. *Id.* Second, the Attorney General must find that refusing the noncitizen entry "would result in extreme hardship to the citizen or lawfully resident spouse or parent" of the noncitizen. *Id.*

Echeverri is currently waiting for a determination on whether the Attorney General will grant her a provisional unlawful presence waiver. *See generally* Compl. Barrera filed his Form I-130 on Echeverri's behalf on approximately March 23, 2020. Compl. ¶ 4. USCIS approved the Form I-130 on November 10, 2020. Compl. ¶ 6. Echeverri filed her Form I-601A, the relevant application to receive a provisional unlawful presence waiver, on April 20, 2021. Compl. ¶ 7.

USCIS has not taken any action on the application. Compl. ¶ 8. Plaintiff filed this action on May 5, 2023, asserting two claims to relief: one for unreasonable delay of agency action and one for violation of her due process. Compl. ¶¶ 18–28. Additionally, while Echeverri does not include a count for mandamus relief, she also seeks a writ of mandamus to compel adjudication of her application. Compl. at 5–6. Finally, Plaintiff asks this Court to adjudicate her waiver petition itself. *Id.* Defendants move to dismiss this case because (1) the Court does not have jurisdiction over Echeverri's unreasonable delay and mandamus claims; and (2) Echeverri has failed to state a claim upon which relief can be granted.

## LEGAL STANDARD

A party may move to dismiss a case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). FED. R. CIV. P. 12(b)(1). A challenge to the court's subject matter jurisdiction can either be a "facial" or "factual" attack on jurisdiction. *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). A facial attack challenges the court's jurisdiction based solely on the plaintiff's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Factual attacks rely on matters outside of the pleadings, and the court may consider extrinsic evidence and "weigh the facts" to determine if jurisdiction exists. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)). The plaintiff has the burden of proving jurisdiction exists over a case. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim," but a complaint must set forth more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In addition to accepting the complaint's allegations as true, the court must draw all inferences in the plaintiff's favor when determining if a complaint states a claim to relief. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). A claim to relief is plausible where the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ultimately, "determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations accepted) (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

### I. This Court Lacks Subject Matter Jurisdiction

Defendants argue the Court lacks subject matter jurisdiction under the Administrative Procedure Act ("APA") because the Immigration and Nationality Act ("INA") strips the Court of jurisdiction over this matter. Because Defendants only rely on Plaintiff's allegations, they lodge a facial attack on the Court's jurisdiction. The Court agrees it lacks jurisdiction over Echeverri's APA and mandamus claims.

#### *a. The Court Does Not Have Jurisdiction to Award Mandamus Relief*

Defendants only move to dismiss any mandamus claim for lack of subject matter jurisdiction based on the INA's jurisdiction stripping provision. Mot. at 2 n.2. Plaintiff, however, has extensively briefed whether the Mandamus Act confers jurisdiction over this dispute. Resp. at 7–10. Additionally, "[a] federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985). Therefore, the Court

must determine if the Mandamus Act provides jurisdiction to award relief in these circumstances. As this Court has recently explained, mandamus jurisdiction does not exist in the context of an alleged delay in adjudicating a Form I-601A. *Mafundu v. Mayorkas*, No. 23-60611, 2023 WL 5036142, at *3–4 (S.D. Fla. Aug. 8, 2023). District courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy available only in the clearest and most compelling of cases." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011). "[A] writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). A federal court only has mandamus jurisdiction when "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Serrano*, 655 F.3d at 1263. A plaintiff must demonstrate that "his right to the writ is clear and indisputable" before a court can award mandamus relief. *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1037 (11th Cir. 2021) (quoting *Serrano*, 655 F.3d at 1263).

Plaintiff has not established the first two requirements for mandamus relief. The proper inquiry in these circumstances is whether Echeverri has demonstrated a clear right to have her Form I-601A adjudicated within a specific timeframe. *See Mafundu*, 2023 WL 5036142, at *3; *Osechas Lopez v. Mayorkas*, — F. Supp. 3d —, 2023 WL 152640, at *3 (S.D. Fla. 2023) ("[T]he Court must determine whether Defendants have a non-discretionary duty to act to adjudicate Plaintiff's I-526 petition in a certain time frame, whether general, reasonable, or even the more specific period of '180 days.'" (quoting 8 U.S.C. § 1571(b))); *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1255 (S.D. Fla. 2022) (concluding "[p]laintiffs ha[d] not demonstrated a clear right" to have

Page 5 of 18

"USCIS expedite processing of their I-130 Petition" or that USCIS had "a clear duty to act with respect to the pacing of their I-130 Petition").

There is nothing indicating Defendants have a clear duty to act on the petition within a specific timeframe. In fact, Plaintiff does not cite any statute whatsoever providing a specific timeframe and instead relies on the fact agencies must generally adjudicate petitions in a timely manner. *See* Resp. at 7–9. Nevertheless, the Court notes 8 U.S.C. § 1571(b) provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But Congress's "sense" of how long application processing "should" take does not establish that Defendants have a clear duty to process an application within Plaintiff's preferred timeframe. "Should" is "permissive, and not mandatory." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). Congress's use of permissive wording makes it abundantly clear it did not impose a mandatory timeframe on the processing of applications. The first two requirements for mandamus jurisdiction are clearly not met.

Finally, while the Court concludes it does not have jurisdiction over Echeverri's APA claim, in the event jurisdiction were to exist, Echeverri's APA claim would provide adequate relief. And "[t]he availability of [such] relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011). Therefore, if the Complaint is construed to bring a mandamus claim, that claim must be dismissed.[2]

---

[2] Because the Court concludes it does not have jurisdiction under the Mandamus Act, it does not determine whether Echeverri has stated a mandamus claim. Additionally, while Echeverri's Response discusses whether she has standing to sue under the Mandamus Act, the Court does not reach this issue.

Page **6** of **18**

### b. *8 U.S.C. § 1182(a)(9)(B)(v) Prohibits Review under the APA*

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. And courts may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). There are limits, however, to judicial review of agency action. A court is without power to issue relief where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *See id.* § 701(a).

Defendants argue the INA prohibits judicial review of the pace at which USCIS adjudicates waiver applications. Mot. at 6–7. The INA provides in relevant part:

> The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. *No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.*

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Plaintiff has seemingly not responded to this argument at all. *See generally* Resp. The Court agrees jurisdiction over this matter is explicitly prohibited by § 1182(a)(9)(B)(v)'s broad language. Congress prohibited courts from reviewing any "decision or *action* . . . regarding a waiver." 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). The plain meaning of "action" is expansive and includes "a thing done" and "the process of doing." WEBSTER'S THIRD NEW INT'L DICTIONARY, at 21 (1993). The APA defines "agency action" even more broadly as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. § 551(13) (emphasis added). And when "regarding" is used "in a legal context [it] generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Patel v.*

Page **7** of **18**

*Garland*, 142 S. Ct. 1614, 1622 (2022) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)).  USCIS's decisions about the pace at which it adjudicates a Form I-601A clearly fall within the realm of actions Congress prohibited district courts from reviewing.

This holding aligns with at least two other district courts and a recent decision by this Court. *See Mafundu*, 2023 WL 5036142, at *4–5; *Mercado v. Miller*, No. 2:22-cv-02182, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023) (stating that "§ 1182(a)(9)(B)(v) precludes judicial review of USCIS's alleged delay in processing" Form I-601A applications); *Lovo v. Miller*, No. 5:22-cv-00067, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023) ("Thus, § 1182(a)(9)(B)(v) applies to USCIS's decision or action to delay the processing of plaintiffs' I-601A application because that decision or action relates to plaintiffs' unlawful presence waiver."); *see also Lin v. Mayorkas*, No. GJH-22-1131, 2022 WL 17850202, at *2 (D. Md. Dec. 21, 2022) (dismissing I-601A unreasonable delay claim for lack of subject matter jurisdiction on the plaintiff's default of a motion to dismiss); *cf. Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353 (S.D. Fla. 2007) (holding "that Congress intended to include the pace [of adjudicating Form I–485 petitions] within [USCIS's] discretionary function").

Consequently, the Court does not have jurisdiction under the APA to review USCIS's pace for adjudicating Form I-601A applications and this claim must be dismissed.

## II. Plaintiff's APA and Due Process Claims Must be Dismissed on the Merits

While the Court does not have jurisdiction over Echeverri's unreasonable delay claim, if it were to reach the merits, this claim would still warrant dismissal for failure to state a claim to relief.  Echeverri's due process claim must be dismissed on the merits as well.

### a. *APA Unreasonable Delay Claim*

Courts often use the "*TRAC* factors" when assessing unreasonable delay claims brought under the APA.  The *TRAC* factors provide the following guidance:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted). While the Eleventh Circuit has not adopted the *TRAC* factors, district courts in this circuit have applied them when adjudicating unreasonable delay claims. *See Mafundu*, 2023 WL 5036142, at *6–8; *Otto v. Mayorkas*, No. 8:22-cv-1172, 2023 WL 2078270, at *3 (M.D. Fla. Feb. 17, 2023); *Osechas Lopez*, 2023 WL 152640, at *5–6. The parties did not brief the *TRAC* factors, but Plaintiff appears to agree they apply given that she references them when arguing the Court should allow discovery. Resp. at 14.

Courts have split on whether the *TRAC* factors may be applied on a motion to dismiss. *Compare, e.g.*, *Mafundu*, 2023 WL 5036142, at *6–8 (applying the *TRAC* factors at the motion to dismiss stage); *Osechas Lopez*, 2023 WL 152640, at *5 (same); *Otto*, 2023 WL 2078270, at *3–4 (same), *with Lammers v. Chief, Immigrant Inv. Program, U.S. Citizenship & Immigr. Servs.*, No. 6:21-cv-668, 2021 WL 9408916, at *2–3 (M.D. Fla. July 28, 2021) (concluding it is premature to apply the *TRAC* factors at the motion to dismiss stage); *Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787, 2021 WL 3603373, at *10 (N.D. Ga. Aug. 13, 2021) (same). Plaintiff argues the Court should wait until at least some discovery has been conducted before adjudicating her unreasonable delay claim. Resp. at 14.

While the parties have not briefed the *TRAC* factors, the Court is satisfied it can conduct the *TRAC* analysis at this stage. At bottom, these factors, when assessed at the motion to dismiss stage, are used "to determine whether a plaintiff's 'complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *See Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (quoting *Ghadami v. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020)). First, this Court has recently applied these factors at the motion to dismiss stage when adjudicating a nearly identical claim. *See Mafundu*, 2023 WL 5036142, at *6–8. Second, while Defendants do not invoke the *TRAC* factors, they almost exclusively cite cases applying them when arguing Plaintiff has failed to state an unreasonable delay claim. Mot. at 8–9. Third, the Court may consider Plaintiff's allegations and requested relief on a motion to dismiss. And finally, the Court may take judicial notice of relevant facts. At this stage, the Court is satisfied that no additional discovery will add plausibility to Plaintiff's unreasonable delay claim.

*i. The First and Second Factors Heavily Favor Defendants*

"Courts typically consider *TRAC* factors one and two together." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). "[T]hese factors get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The first factor is the "most important" of the six factors. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

Recently, this Court recognized that USCIS adjudicates Form I-601A petitions on a first in, first out basis. *Mafundu*, 2023 WL 5036142, at *6. There, the Court looked to information publicly available on USCIS's website, which states, "We generally process cases in the order we receive them." *See* U.S. Citizenship & Immigration Services, *Check Case Processing Times*,

https://egov.uscis.gov/processing-times/ (select "I-601A"; then select "Provisional Waiver of Unlawful Presence" and "Nebraska Service Center"). The Court may take judicial notice of this statement. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 48 & n.3 (D.D.C. 2021) (considering statements on USCIS's website on a motion to dismiss); *Cohen v. Jaddou*, No. 21-CV-5025 (PAC), 2023 WL 2526105, at *2 (S.D.N.Y. Mar. 15, 2023) (taking judicial notice of material on USCIS's website when adjudicating a motion to dismiss).

Courts have seemingly universally held USCIS's first-in, first-out policy is a rule of reason. *See, e.g.*, *Mafundu*, 2023 WL 5036142, at *7; *Palakuru*, 521 F. Supp. 3d at 51 ("Courts have recognized that a 'first-in, first-out method' satisfies the rule-of-reason inquiry."); *Verma v. U.S. Citizenship & Immigr. Servs.*, No. 20-3419 (RDM), 2020 WL 7495286, at *6 (D.D.C. Dec. 18, 2020) ("Those courts that have considered the issue have unanimously held that USCIS's 'first in, first out' policy for adjudicating immigration applications like Plaintiff's qualifies as a 'rule of reason,' thus satisfying the first *TRAC* factor."). Such a policy qualifies as "an identifiable rationale," *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300, and the first *TRAC* factor is satisfied. Accordingly, the first and most important *TRAC* factor weighs heavily against awarding relief in this action.

The second *TRAC* factor also weighs in favor of Defendants because there is no "timetable or other indication of the speed with which [Congress] expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Indeed, "Congress has supplied no timeline for processing waiver applications." *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020). Instead, "Congress has given the agencies wide discretion in the area of immigration processing." *Id.* (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)). And the Court has explained that 8 U.S.C. § 1571 does not mandate a timetable for adjudicating applications. *See also Mafundu*, 2023 WL 5036142, at *7 (concluding 8 U.S.C. § 1571 "does not impose a

mandatory pace for adjudicating applications"); *Otto*, 2023 WL 2078270, at *5 ("[A]ll agree that § 1571(b) is not mandatory."); *Osechas Lopez*, 2023 WL 152640, at *6 (holding § 1571 did not impose a mandatory timetable and the second *TRAC* factor weighed against granting relief); *Da Costa v. Immigr. Inv. Program Off.*, ⸺ F. Supp. 3d ⸺, 2022 WL 17173186, *9–10 (D.D.C. 2022) (concluding the first two *TRAC* factors weighed against plaintiffs in part because "the language in § 1571(b) is merely hortatory"). The second factor, then, also weighs against granting relief.

### ii. The Third and Fifth Factors Only Slightly Favor Plaintiff

The third and fifth factors look to (1) whether "human health and welfare are at stake;" and (2) "the nature and extent of the interests prejudiced by delay." *See TRAC*, 750 F.2d at 80. Plaintiff has included few allegations about the harm she has faced—she only states she has been denied "an opportunity to apply for lawful permanent resident status, in order to have the ability to sponsor family members for residence in the U.S." and that Defendants have harmed her "in various other ways." Compl. ¶ 28. These scant allegations are just barely enough to tilt these factors in Plaintiff's favor at this stage. *See Khan v. Johnson*, 65 F. Supp. 3d 918, 930–31 (C.D. Cal. 2014) (noting "plaintiffs' interests in pursuing permanent residence and citizenship, or at least a final determination on their application so as to end a stressful waiting period, are compelling").

The Court, however, finds Echeverri's concerns carry little weight because her application has not been pending for long when compared to the sorts of delays courts have found reasonable. *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) ("[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (quoting *Sarlak*, 2020 WL 3082018, at *6)); *Otto*, 2023 WL 2078270, at *5 (same); *Sivananthan v. Blinken*, No. 23-1181 (CKK), 2023

WL 4885858, at *3 (D.D.C. Aug. 1, 2023) ("[C]ourts . . . routinely find that delays of numerous years are not unreasonable.").

Additionally, Echeverri notes in her Response that Defendants' alleged delay has caused her "immense stress" and left her "in limbo." Resp. at 12.[3] While harms like these lend slight weight to the third and fifth factors, the Court does not find them compelling because they are inherent in the immigration process and expected when a Form I-601A is filed. *See, e.g.*, *Palakuru*, 521 F. Supp. 3d at 53 (stating that while the plaintiff had "an interest in prompt adjudication, so too d[id] many others facing similar circumstances"); *cf. Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020) (noting certain types of prejudice are "inherent in the asylum application process"); *Liuqing Zhu v. Cissna*, No. CV 18-9698 PA (JPRx), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (similar). The third and fifth *TRAC* factors here are simply not enough to counteract the other factors that weigh heavily against relief.

### iii. The Fourth Factor Weighs Heavily in Defendants' Favor

The fourth *TRAC* factor requires courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor is, standing alone, dispositive of Echeverri's unreasonable delay claim. Agencies are "in a unique—and authoritative—position to view [their] projects as a whole, estimate the prospects for each, and allocate [their] resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). Courts may "refuse[] to grant relief . . . where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain'" even where all other *TRAC* factors weigh in a plaintiff's favor. *See Mashpee*

---

[3] While Plaintiff attached an affidavit to her Response further detailing her alleged harms, such extrinsic material is inappropriate to consider on a motion to dismiss and the Court declines to exercise its discretion to convert the Motion into a motion for summary judgment. *See Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up) (quoting *In re Barr Lab'ys*, 930 F.2d at 75); *see also Otto*, 2023 WL 2078270, at *5 ("[S]witching positions of applicants would 'produce no net gain' in the overall progression of adjudications." (quoting *Mashpee*, 336 F.3d at 1100)).

Since "[a]gency officials . . . presumably have not just been 'twiddling their thumbs'" while Echeverri's application has been pending, awarding relief here would require pushing her ahead of applicants who have been waiting longer. *In re Barr Lab'ys*, 930 F.2d at 75 (alteration accepted) (quoting *Bd. of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989)). The Court would not do so, because it has "no basis for reordering agency priorities." *See In re Barr Lab'ys*, 930 F.2d at 76. And awarding Echeverri relief in this case "would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 14 (D.D.C. 2021) (quoting *Dmitrenko v. Chertoff*, No. 07-cv-0082, 2007 WL 1303009, at *1 (E.D. Va. Apr. 30, 2007)); *see also Liu v. Denayer*, No. CV 21-6653-DMG, 2022 WL 17370527, at *5 (C.D. Cal. July 18, 2022) (same). This factor—which would not change whatsoever with additional discovery—leads the Court to conclude that Echeverri's unreasonable delay claim does not state a plausible claim to relief.

### iv. The Sixth Factor is Neutral

The final factor provides that courts do not have to "find any impropriety lurking behind agency lassitude." *TRAC*, 750 F.2d at 80 (citation omitted). Plaintiff does not allege any bad faith or impropriety on the part of USCIS. Consequently, this factor is neutral.

An analysis of the *TRAC* factors therefore leads to only one conclusion: Echeverri has not stated a plausible claim to relief. There is nothing discovery will produce that would provide "an adequate reason why the Court should compel USCIS to grant [Echeverri] 'preferential treatment

over the other applicants simply because [she] filed a lawsuit.'" *Kamath v. Campagnolo*, No. SACV 21-01044-CJC(ADSx), 2021 WL 4913298, at *4 (C.D. Cal. Aug. 13, 2021) (quoting *Muvvala v. Wolf*, No. 1:20-cv-02423 (CJN), 2020 WL 5748104, at *6 (D.D.C. Sept. 25, 2020)).

### v. The Court Cannot Adjudicate the Petition

Plaintiff alternatively asks the Court to assume jurisdiction and adjudicate her petition itself. Compl. at 6. She provides no authority in support of the Court's ability to do so, and the Court fails to see how it could possibly grant a remedy that is within the "sole discretion" of the Attorney General. 8 U.S.C. § 1182(a)(9)(B)(v). Were the Attorney General to deny the application, the Court could not review that determination under the plain language of the INA. *See id.* Thus, in the absence of *any* authority that the Court has the power to grant such relief, the Court concludes it cannot adjudicate Plaintiff's application itself. This request is therefore denied.

### b. Due Process Claims

Plaintiff's due process claim must also be dismissed. As Defendants point out in their Motion, Plaintiff does not specify which form of due process she relies on. Mot. at 9. She does not clarify this in her Response, so she seems to assert a substantive due process as well as a procedural due process claim. Both fail.

The Fifth Amendment prohibits the federal government from depriving a person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. This protects both substantive as well as procedural due process. Substantive due process "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). It also protects against government action that "shocks the conscience." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836, 846–47 (1998)). Because "[s]ubstantive due process is a legal concept 'untethered

from the text of the Constitution,' . . . 'the Supreme Court has been reluctant to expand' its scope." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020) (quoting *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019)). Because of their untethered, open-ended nature, Courts must "exercise the utmost care" when faced with substantive due process claims. *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). A procedural due process violation, meanwhile, has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) [government] action; and (3) constitutionally-inadequate process." *J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Courts have routinely dismissed both substantive and procedural due process claims alleging unreasonable delay in adjudicating an immigration application. *See, e.g.*, *Taj v. U.S. Dep't of State*, No. 22-1087 (RDM), 2022 WL 17250302, at *6 (D.D.C. Nov. 28, 2022); *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-1262 (RC), 2021 WL 5998385, at *9–10 (D.D.C. Dec. 20, 2021). Since the government is a sovereign entity with the power to exclude noncitizens, a noncitizen seeking entry typically "has only those rights regarding admission that Congress has provided by statute." *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020). As such, noncitizens do not have "a constitutionally-protected interest in the procedures by which . . . visas are obtained." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011). And "there is [generally] no property right in an immigrant visa." *See Taj*, 2022 WL 17250302, at *6 (citation omitted).

Both of Echeverri's due process claims fail because she has no property right or other protected interest to underlie them. She cannot base these claims on any asserted interest in a potential visa or provisional waiver because she has no property interest in either. *See Taj*, 2022 WL 17250302, at *6. Additionally, while Echeverri alludes to the fact that she wishes to sponsor

other family members for residence, she has not brought a family unity claim. Had she attempted to bring a family unity claim, however, her purported interest here would not be the type of right protected by substantive due process in these circumstances. *See, e.g.*, *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) ("[T]he generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members." (internal quotation marks and citation omitted)); *cf. Keyhanpoor v. Blinken*, 633 F. Supp. 3d 88, 96–97 (D.D.C. 2022) (stating that U.S. citizens "have no constitutional right" to reside in the United States with noncitizen relatives). There is no authority showing Echeverri possesses a fundamental right to citizenship so that she can sponsor other noncitizens that Congress could rightly exclude, so substantive due process affords her no remedy.

Finally, in addition to lacking a property interest that can support the first element of her procedural due process claim, Echeverri has not identified any statutory procedure USCIS has violated in adjudicating her application. She is entitled to no more process than Congress has provided her, and as already discussed, Congress has provided no mandatory timeline for the adjudication of Form I-601A applications. Therefore, Echeverri's procedural due process claim also fails to afford her relief.

## CONCLUSION

In sum, the Court does not have jurisdiction over Echeverri's mandamus and unreasonable delay claims. But even if jurisdiction were to exist over her unreasonable delay claim, she fails to state a plausible claim to relief.[4] Therefore, it is hereby

---

[4] The Complaint is also a shotgun pleading that the Court would have to dismiss. There are four types or categories of shotgun pleadings, the first of which encompasses pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Here, the Complaint is the first type of shotgun pleading because it reincorporates all preceding allegations into the second claim for relief. Compl.

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, [ECF No. 6], is **GRANTED**.

2. Plaintiff's mandamus and unreasonable delay claims are **DISMISSED** for lack of subject matter jurisdiction.

3. Plaintiff's due process claims are **DISMISSED with prejudice** for failure to state a claim.

4. Any other pending motions are **DENIED AS MOOT**

5. The Clerk is instructed to mark this case **CLOSED**.

**DONE AND ORDERED** in Miami, Florida this 21st day of August, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

¶ 25. The Court would therefore have to *sua sponte* dismiss the Complaint. *See Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009).